UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Avishay (Allison) Alon

    v.
                                  Case No. 25-cv-505-SM-TSM
                                       Opinion No. 2026 DNH 088

New Hampshire Department
of Corrections, et al.

## O R D E R

Avishay Alon, a transgender female inmate at the New Hampshire State Prison for Men ("NHSPM"), brings federal and state claims against the New Hampshire Department of Corrections ("NHDOC"), NHDOC Commissioner William Hart, Acting Assistant Commissioner Michelle Edmark, NHSPM Acting Deputy Warden Matthew Stanczak, and three John Doe correctional officers, all arsing from defendants' actions and inaction regarding her diagnosis of gender dysphoria and her transgender status.  The named defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1]  Doc. no. 12.  Alon objects.  Doc. no. 15.  For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## Standard of Review

For purposes of a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded facts in the complaint as

---

[1] Because the John Doe defendants are not identified, they are not yet served and are not included in the motion to dismiss.

true and resolves all reasonable inferences in favor of the nonmoving party.[2]  Holland v. Elevance Health, Inc., 171 F.4th 126, 130 (1st Cir. 2026).  The court then asks "whether the complaint's factual allegations, if taken as true, state a claim to relief that is plausible on its face."  Berk v. Choy, 607 U.S. 187, 193 (2026) (internal quotation marks omitted).   "A complaint that satisfies this standard is well-pleaded" and may proceed.  Id.

The court notes that defendants include in the 12(b)(6) motion a defense of sovereign immunity based on the Eleventh Amendment.  Doc. no. 12-1, at 6-8.  Generally, a motion to dismiss on sovereign immunity grounds raises a jurisdictional challenge, which is addressed under Federal Rule of Civil Procedure 12(b)(1).  See Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015); accord Raymond v. Registry of Motor Vehicles, No. 25-30022-MGM, 2026 WL 102424, at *1 (D. Mass. Jan. 14, 2026).  Nevertheless, because the standard of

---

[2] Alon filed a document with her complaint that is titled a declaration.  Doc. no. 1-1.  The declaration is not sworn and does not satisfy the requirements for an unsworn declaration under 28 U.S.C. § 1746.  Therefore, the declaration lacks evidentiary value.  Also, evidence is neither required nor generally appropriate to oppose a Rule 12(b)(6) motion.  See Fed. R. Civ. P. 12(d); Sierra v. Bisignano, 158 F.4th 43, 49 (1st Cir. 2025).  For these reasons, the complaint, but not the declaration, was considered for purposes of the motion to dismiss.

review under the two rules is the same in the context of this case, the court will proceed based on the current motion.  See Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 51 (1st Cir. 2006).

### Background[3]

Alon is a transgender woman who has been diagnosed with gender dysphoria and received "gender-affirming transition medical care prior to and during her incarceration." Doc. no. 1, ¶ 7.  Before her incarceration, she had more than two years of "gender-transition care, such as hormone therapy, counseling, laser hair removal, speech therapy, and real-life experience in her affirmed gender role." Id., ¶ 15.  After she was charged with conspiracy to commit kidnapping, possession of a controlled drug, and criminal threatening, Alon was detained at Strafford County Jail in protective custody in a women's unit, where the jail provided Alon with hormone therapy injections and razors and tweezers for hair removal.

Alon was convicted of the charged crimes and was sentenced on July 7, 2025.  The sentencing judge recommended that Alon's medical and mental health care be continued during

---

[3] The background information is taken from Alon's complaint, document no. 1, unless otherwise noted.

3

incarceration.  Alon was transferred from the Stafford County Jail to the NHSPM to serve her sentence.

Alon alleges that placement in a men's prison is inconsistent with her gender identity and her treatment plan. When she arrived at the prison, she did not have access to gender-transition treatment and accommodation, including hormone therapy, grooming products, and other support.  The interruption in treatment exacerbated her gender dysphoria, which caused emotional distress.  She is also at risk for victimization, such as harassment and sexual assault.

On July 14, 2025, Alon filed an inmate request slip asking to be transferred to the New Hampshire Correctional Facility for Women or to administrative home confinement.  She did not receive a response within the time provided in New Hampshire Administrative Rule Corrections 312.01(l).  She filed a grievance form on July 28, 2025, but did not receive a response. On July 31, 2025, she received a form notifying her that she was classified to the Northern Correction Facility Close Custody Unit.  Alon requested gender affirming health care items, particularly razors and tweezers, in inmate request slips.

4

Alon's counsel sent and emailed a letter to the Commissioner on August 1, 2025, seeking classification for Alon to the women's prison.  On August 8, 2025, Alon received notice that the Commissioner received a letter from her counsel.  She then received responses from the Commissioner's office that the office required additional time to respond to her grievances.

On October 28, 2025, the Commissioner, through Michele Edmark, denied Alon's request to be housed at the women's prison.  That communication stated that the NHDOC was willing to consider placing Alon at a county jail or placing her in the residential treatment program at the prison.  Alon and her counsel both notified NHDOC that Alon wanted to be transferred to the residential treatment unit ("RTU").  NHDOC transferred Alon to the RTU on November 24, 2025.  Alon alleges that she continues to be denied "proper gender transition and medically necessary care."  Doc. no. 1 ¶ 33.

Alon also alleges specific acts by John Doe correctional officers that she contends are discriminatory.  When she arrived at the prison, the John Doe defendants took her female undergarments that she was wearing when she arrived and refused to provide female undergarments "[f]or a significant period of time." Doc. no. 1, ¶ 39.  John Doe defendants told her that she

5

was in the men's prison because she has a penis and that she would be treated just like a man.  The John Doe defendants subjected her to strip searches although she asked for a female correctional officer, and called her "sir".

The John Doe defendants denied her requests for razors and tweezers.  NHDOC will not provide the injectable hormone therapy that was prescribed and instead gives her hormone pills.  The NHDOC's change in Alon's treatment has caused a reduction in her hormone level.

Alon brings federal and state claims arising from her treatment at NHSPM.  In support of claims under 42 U.S.C. § 1983, Alon alleges that the defendants were deliberately indifferent to her serious medical needs in violation of the Eighth Amendment (Count I) and that her treatment at the NHSPM violates her due process and equal protection rights under the Fourteenth Amendment (Count II).  She alleges that all of the defendants have violated the Prison Rape Elimination Act (Count III) and the Americans with Disabilities Act (Count IV).  She also alleges that the defendants have violated the New Hampshire Constitution, Part I, Article 2 (Count V), NDOC policy (Count VI), and the World Professional Association for Transgender Health Standards of Care (Count VI).  She further alleges that

6

the defendants' conduct discriminates against her based on her sex and gender identity in violation of N.H. R.S.A. 354-A (Count VII).  She seeks a declaratory judgment that defendants have violated her statutory and constitutional rights; an injunction to require her transfer to the women's prison, to have medically necessary gender transition care, to ensure her safety and dignity, and to prevent retaliation; as well as compensatory and punitive damages.

## Discussion

Defendants move to dismiss certain claims based on Eleventh Amendment sovereign immunity.  They also move to dismiss Alon's claims on the merits and challenge her requests for punitive damages and attorneys' fees.  In response, Alon acknowledges that sovereign immunity bars some of her federal claims, that she cannot bring a claim under PREA, and that her state law claims and policy-based claims may be barred by sovereign immunity and may not state actionable claims.[4]

---

[4] Within her objection, Alon asks that she be given leave to amend if any claim is dismissed.  Under Federal Rule of Civil Procedure 15(a), Alon could have amended the complaint within 21 days after service of the motion to dismiss.  At this stage, however, Alon must seek leave of court by filing a motion to amend.  Fed. R. Civ. P. 15(a)(2); see also LR 7.1(a)(1) ("Objections to pending motions and affirmative motions for relief shall not be combined in one filing.").  For those reasons, the court does not address Alon's suggestion that she

I.  Sovereign Immunity

   A. Section 1983 Claims

   Defendants move to dismiss Alon's claims under § 1983 against the NHDOC and Commissioner Hart, Warden Edmark, and Acting Deputy Warden Stefenczak to the extent Alon seeks money damages or retrospective declaratory relief.[5]  Sovereign immunity protects states and state officials sued in their official capacities from liability under § 1983 for money damages and other retrospective relief.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 & 71 (1989).  Therefore, Alon's § 1983 claims against the NHDOC are dismissed, and her claims for retrospective relief, including damages, against the named defendants, who are sued in the official capacities, are also dismissed.

   The Ex parte Young exception to sovereign immunity, however, allows a party to sue a state officer in his or her official capacity, alleging "an ongoing violation of federal law" and seeking "only relief properly characterized as

----

be given leave to amend, which must be raised if appropriate in a motion for that purpose.

[5] Although not clearly alleged, defendants assume that Hart, Edmark, and Stefenczak are sued only in their official capacities, and Alon appears to agree with that assumption. Therefore, the court construes the complaint to allege only official capacity claims against Hart, Edmark, and Stefenczak.

8

prospective." Courtemanche v. Noble, 177 F.4th 60, 64 (1st Cir. 2026). Alon alleges that defendants continue to violate her rights under the Eighth and Fourteenth Amendments by housing her in the men's prison and not properly treating her gender dysphoria. Alon's claims against Hart, Edmark, and Stefenczak in their official capacities seeking prospective injunctive relief fall within the Ex parte Young exception and are not affected by state sovereign immunity.

### B. State Law Claims

Defendants move to dismiss all of Alon's state law claims against them based on sovereign immunity under the Eleventh Amendment. See Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-101, & 106 ((1984). Alon does not appear to object to that part of the motion to dismiss but instead argues that her state law claims support her federal claims. That theory does not overcome the state's sovereign immunity. Alon's state law claims are dismissed against the moving defendants.

## II. Merits

Alon brings federal claims under 42 U.S.C. § 1983, the Prison Rape Elimination Act ("PREA"), and the Americans with Disabilities Act ("ADA"). She also brings state law claims under the New Hampshire Constitution; NHDOC policies and

9

standards established by the World Professional Association of Transgender Health; and New Hampshire's Law Against Discrimination, RSA chapter 354-A.  Because Alon's state law claims are dismissed based on sovereign immunity, they are not addressed on the merits.

### A.  Section 1983 – Counts I and II

Alon brings an Eighth Amendment claim (Count I) and two Fourteenth Amendment claims (Count II) under § 1983 against Hart, Edmark, and Stanczak in their official capacities.

#### 1.  Eighth Amendment – Count I

Alon alleges that defendants interrupted her established hormone therapy and "other medical necessary interventions," which were in place before she was moved to NHSPM, in violation of the Eighth Amendment.  Doc. no. 1 ¶ 63.  "Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs."  Lech v. von Goeler, 92 F.4th 56, 74 (1st Cir. 2024).  "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective element, which requires proof of a serious medical need, and a subjective element, which requires a showing that a prison official had a sufficiently culpable state of mind such that they were deliberately indifferent to that need.  Id.

10

(internal quotation marks omitted).  Defendants argue that Alon did not allege a deprivation of needed medical care and instead merely disagreed with the treatment they provided.

### a.  Serious medical need.

In the context of the Eighth Amendment, a serious medical need is one that either has been diagnosed by a physician or is so obvious that a lay person could easily recognize the need for medical care.  Lech, 92 F.4th at 74.  Alon alleges that she has been diagnosed with gender dysphoria and has received medical treatment for gender dysphoria both before she was incarcerated and before she was transferred to NHSPM.  A prison inmate who alleges a diagnosis of gender dysphoria presents a serious medical need within the meaning of the Eighth Amendment.  See Kosilek v. Spencer, 774 F.3d 63, 85-86 (1st Cir. 2014); Soneeya v. Mici, 717 F. Supp. 3d 132, 152 (D. Mass. 2024).  Therefore, Alon has alleged a serious medical need.

### b. Deliberate indifference.

Defendants argue that Alon did not allege facts to show that they were deliberately indifferent to her need for treatment for gender dysphoria and instead her allegations show that she merely disagreed with the treatment provided.  To support an Eighth Amendment claim that prison officials were

11

deliberately indifferent to her serious medical needs, a prisoner must allege facts that show they "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Lech, 92 F.4th at 75 (internal quotation marks omitted). That is, "prison officials must either deny needed medical treatment in order to punish the inmate, or display wanton or criminal recklessness in the treatment afforded." Id. "[P]rison officials are not required to render ideal care, let alone cater to an inmate's preferred healthcare regimen. They simply must provide care at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." Snell v. Neville, 998 F.3d 474, 495 (1st Cir. 2021) (internal quotation marks omitted).

Alon alleges that defendants transferred her to NHSPM instead of the women's prison in violation of her medical needs and interrupted her established treatment for gender dysphoria when she was transferred. She also alleges that defendants are not providing the same treatment that she received before she was transferred to NHSPM – in particular, defendants are not providing injectable hormone therapy or grooming products for hair removal, including razors and tweezers.

12

In the context of gender dysphoria, a prison must provide adequate care, but what is required for adequate care is a challenging and fact-specific inquiry that may require expert opinions and evaluations.[6]  See Kosilek, 774 F.3d at 85-86; see also Clark v. Valletta, 157 F.4th 201, 212-16 (2d Cir. 2025). While Alon cannot choose her own treatment regimen, she alleges that injectable hormones are required to provide adequate treatment for her gender dysphoria.  Alon also alleges that adequate treatment for gender dysphoria requires housing in a women's prison.

Further, according to the complaint, Alon requires hair removal tools for gender dysphoria treatment, and defendants are denying all hair removal tools.  While defendants generally invoke security reasons for denying those tools, they do not explain why they deny Alon a razor; or whether all inmates are denied razors (presumably the male non-transgender inmates at NHSPM shave).  That deprivation alone, in some circumstances, could be enough to preclude dismissal of the Eighth Amendment claim.

---

[6] For that reason, the Eighth Amendment claim would be better addressed in the context of summary judgment.

13

Taking Alon's allegations as true and in the light most favorable to her, consistent with the Rule 12(b)(6) standard, she states a plausible Eighth Amendment claim of deliberate indifference to her serious medical needs – treating gender dysphoria.  Therefore, the motion to dismiss is denied as to Count I.


### 2. Fourteenth Amendment – Count II

Alon alleges that defendants have violated her rights to due process and equal protection under the Fourteenth Amendment.


#### a.  Procedural due process.

"To establish a procedural due process violation, the plaintiff must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [her] of that interest without constitutionally adequate process."  Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011).  Alon does not identify a protected liberty or property interest in being housed in the women's prison.[7]

---

[7] In her objection, Alon argues, without citation to authority, that she states a due process claim because: "Defendants imposed a housing and treatment regime that disregarded known medical and safety risks and failed to follow individualized processes required by governing standards and policies." Doc. no. 15-1, at 13.  To the extent she intended to argue a due process claim based on prison standards and policies, that does not state a claim.  See, e.g., O'Mara v. New

14

Courts generally hold that prisoners do not have a liberty interest in being housed in a particular prison and apply that rule in the context of due process claims by transgender inmates seeking assignment to women's prisons.  See, e.g., Aliahmed v. Troxler, 839 F. App'x 675, 677 (3d Cir. 2021)(holding that gender dysphoric plaintiff lacked a liberty interest in being transferred to a women's prison); Hart v. Puckett, No. 24-cv-489, 2026 WL 1345297, at *8 (W.D. Ky. May 14, 2026) (citing cases denying due process claims brought by transgender inmates); Eagle v. Washington State Dep't of Corr., No. 24-cv-01388, 2025 WL 270555, at *4 (W.D. Wash. Jan. 21, 2025), report

---

Hampshire State Prison for Men, No. 22-cv-380, 2023 WL 10477231, at *9 (D.N.H. Nov. 28, 2023), report and recommendation adopted sub nom. O'Mara v. NH State Prison for Men, No. 22-cv-380, 2024 WL 1241905 (D.N.H. Mar. 21, 2024) ("A prison official's violation of jail policies or procedures does not by itself violate the Constitution or otherwise create a cause of action under § 1983."); Walker v. Hardenberg, No. 24-cv-726, 2025 WL 683626, at *14 (W.D. Mich. Mar. 4, 2025) (rejecting a claim based on violations of prison standards and policies and stating that "[c]laims under Section 1983 can only be brought for deprivations of rights secured by the Constitution and laws of the United States") (internal quotation marks omitted). Further, if Alon intended to allege a substantive due process claim, she has not alleged facts to show defendants engaged in conduct that shocks the conscience.  See Daly v. Mason, 752 F. Supp. 3d 346, 360 (D. Mass. 2024) ("The applicable test 'is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'")(quoting Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011)).

and recommendation adopted, No. 24-cv-1388, 2025 WL 660621 (W.D. Wash. Feb. 28, 2025).

In Doe v. Massachusetts Department of Correction, No. 17-cv-12255, 2018 WL 2994403, at *11 (D. Mass. June 14, 2018), however, the court concluded that plaintiff stated a procedural due process claim based on Sandin v. Conner, 515 U.S. 472 (1995). The court noted that "the Supreme Court held [in Sandin] that prison housing classifications give rise to a protected liberty interest only if the classification creates an 'atypical and significant hardship on the inmate in relation to the normal incidents of prison life.'" Doe, 2018 WL 2994403, at *11. Then, for purposes of procedural due process, if an "atypical and significant hardship' is imposed, the State must make available a procedure by which the aggrieved inmate can challenge the assignment." Id. In this case, Alon does not allege that she was denied a procedure to challenge the assignment to the men's prison and, in fact, alleges that she used the prison grievance procedure to challenge her classification to the NHSPM. Doc. no. 1, at 6. In these circumstances, Alon does not allege a due process violation.

16

b.  Equal protection.

In support of her equal protection claim, Alon alleges that "by classifying [her] in a men's facility solely on the basis of her anatomy or sex assigned at birth, and by denying her access to gender-transition accommodations, Defendants have treated [her] differently from similarly situated cisgender women and have failed to provide equal protection under the law."[8]  Doc. no. 1 ¶ 70.  Alon argues in her objection that she states an equal protection claim based on allegations that she was "housed and treated as male because of anatomy and sex assigned at birth, and that officials explicitly stated as much."[9]  Doc. no. 15-1, at 12.

An equal protection analysis depends in part on whether defendants' decision to house Alon at the men's prison is a sex-based classification, which requires intermediate scrutiny, or a transgender or gender identity classification, which may not require intermediate scrutiny.  See W. Virginia v. B. P. J. by

---

[8] "Cisgender" means non-transgender.  Doe 2 v. Shanahan, 917 F.3d 694, 697 (D.C. Cir. 2019).

[9] To the extent Alon relies on Williams v. Kincaid, 45 F.4th 759 (4th Cir. 2022), to support her equal protection claim, that reliance is misplaced.  The constitutional claims in Williams were dismissed by the district court based on the statute of limitations, and those claims were not addressed on the merits by the Fourth Circuit in that decision.  Id. at 776 & n.10.

17

Jackson, No. 24-38, 2026 WL 1868739, at *14 (U.S. June 30, 2026).  In a similar case, the Tenth Circuit Court of Appeals held that the transgender plaintiff alleged an equal protection violation, under intermediate scrutiny, due to her assignment to a men's prison based on her male anatomy.  Griffith v. El Paso Cnty., Col., 129 F.4th 790, 814 (10th Cir. 2025); see also Doe v. Mass. Dep't of Corr., 2018 WL 2994403, at *10 (denying motion to dismiss equal protection claim based on transgender inmate's assignment to men's prison).  Alon alleges that she is assigned to the men's prison because of her male anatomy and the sex she was assigned at birth rather than to a women's prison, which is arguably a classification based on biological sex.  See W. Virginia, 2026 WL 1868739, at *14.

"Sex-based classifications are permissible only when the classification is 'substantially related' to achieving an 'important' government objective."  Id., at *10 (quoting United States v. Skrmetti, 605 U.S. 495, 510 (2025)).  In their motion to dismiss, defendants argue that Alon "has put forth no direct evidence of class-based animus, and she fails to identify any other individuals with which she is similarly situated."  Doc. no. 12-1, at 12.  As such, defendants do not address the claim Alon asserts;, which is that she was assigned to the men's prison because of her male anatomy when, because of her

18

transgender status, she is similarly situated with female inmates.  As a result, defendants have not shown or even argued that the classification to a men's prison is substantially related to an important government objective.  Courts have found viable equal protection claims in similar circumstances.  See, e.g., Griffith, 129 F.4th at 810-20; S.D. v. Rees, No. 25-cv-01726, 2026 WL 1146591, at *11 (D. Or. Apr. 28, 2026); Gilliam v. Dep't of Pub. Safety & Corr. Servs., No. 23-cv-1047, 2024 WL 5186706, at *19 (D. Md. Dec. 20, 2024) (rational basis analysis); Doe, 2018 WL 2994403, at *9-*10. The motion is denied as to Alon's equal protection claim in Count II.

    B. Prison Rape Elimination Act – Count III

As Alon concedes, there is no private cause of action under PREA.  See, e.g., Freese v. Manchester Police Dep't, No. 23-cv-235-JL-AJ, 2024 WL 7094608, at *5 (D.N.H. Dec. 18, 2024), report and recommendation approved sub nom. Freese v. Manchester Police Dep't, No. 23-cv-235-JL, 2025 WL 777144 (D.N.H. Mar. 10, 2025); Therriault v. N. N.H. Corr. Facility, No. 23-cv-449, 2024 WL 5500151, at *3 (D.N.H. Dec. 12, 2024), report and recommendation approved sub nom. Therriault v. N. NH Corr. Facility, No. 23-cv-449, 2025 WL 986145 (D.N.H. Apr. 2, 2025).  Count III, alleging a violation of PREA, is dismissed.

C. <u>Americans with Disabilities Act– Count IV</u>

Alon alleges that her gender dysphoria is a disability under the ADA and that defendants violated the ADA by failing to reasonably accommodate her disability.  Defendants move to dismiss Alon's ADA claim on the grounds that gender dysphoria is not a disability under 42 U.S.C. § 12132.  Defendants also contend that Alon has not alleged discrimination because of her disability.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The prohibition against discrimination by reason of a disability includes an obligation to provide reasonable accommodation for a disability.  See <u>Conlon v. Scaltreto</u>, 158 F.4th 211, 225-26 (1st Cir. 2025); <u>Doe v. Rhode Island Interscholastic League</u>, 137 F.4th 34, 41 (1st Cir. 2025).  The term disability does not include gender identity disorders that do not result from physical impairments.  42 U.S.C. § 12211(b)(1).

Courts have concluded that diagnosed gender dysphoria is not excluded from the ADA.  <u>Williams v. Kincaid</u>, 45 F.4th 759,

20

769-71 (4th Cir. 2022); <u>Doe v. Dzurenda</u>, No. 16-cv-1934, 2026 WL 1091732, at *19 (D. Conn. Apr. 22, 2026); <u>Moore v. Macomber</u>, No. 25-cv-2980, 2026 WL 836625, at *3 (S.D. Cal. Mar. 26, 2026); <u>Oliver v. Georgia Dep't of Corr.</u>, No. 25-cv-120, 2026 WL 709896, at *8 (M.D. Ga. Mar. 13, 2026), <u>report and recommendation adopted,</u> No. 25-cv-00120, 2026 WL 1064797 (M.D. Ga. Apr. 8, 2026); <u>Guthrie v. Noel</u>, No. 20-cv-02351, 2023 WL 8115928, at *13 (M.D. Pa. Sept. 11, 2023), <u>report and recommendation adopted,</u> No. 20-cv-2351, 2023 WL 8116864 (M.D. Pa. Sept. 29, 2023); <u>Doe v. Mass. Dep't of Correction</u>, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018).  Defendants do not address, or attempt to distinguish, cases that have found gender dysphoria to be a disability under the ADA.  As such, defendants have not shown that they are entitled to dismissal of the ADA claim on that basis.

Defendants do argue that Alon does not allege an ADA discrimination claim because the ADA prohibits disability discrimination but does not prohibit inadequate treatment for disability.  <u>See</u> <u>Snell,</u> 998 F.3d at 501.  Alon's claim, however, is that defendants failed to provide reasonable accommodation for her disability "including access to gender-transition care, housing, and daily living accommodations." Doc. no. 1 ¶ 76.  Alon states a cognizable ADA claim for failure to provide reasonable

21

accommodation.  See Oliver, 2026 WL 709896, at *7; Guthrie, 2023 WL 8115928, at *14.

### D. Damages

Defendants move to dismiss Alon's "claims" for punitive damages and attorney's fees.  Alon brings no claim for punitive damages or for attorney's fees and instead requests those as forms of relief.  Because sovereign immunity precludes damages being awarded against the named defendants, Alon cannot seek punitive damages against them.  Attorney's fees may be awarded, depending on the outcome, but that will not be determined until the conclusion of the case.

## Conclusion

For these reasons, defendants' motion to dismiss (doc. no. 12) is granted in part and denied in part.

The motion is granted to the extent that claims for money damages in Counts I and II are dismissed, and the equal protection claim in Count II along with Counts III, V, VI, and VII are dismissed.  The motion is otherwise denied.

The claims remaining in the case are Count I (Eighth Amendment), Count II (equal protection), and Count IV (ADA).

22

With respect to the named defendants, Counts I and II are limited to claims against them in their official capacities for prospective relief only.


      SO ORDERED.

                                   _____
                                   Steven J. McAuliffe
                                   United States District Judge
                                   Sitting by designation.

July 14, 2026

cc:  Counsel of Record